**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

In Re:

Q4 PROPERTIES, LLC,                                    Case No. 14-37540-RAM
                                                       Chapter 11
        Debtor.

_____/


NE 4TH COURT LOANS, LLC,                               Adv. No.  15-01169-RAM

        Plaintiff,

v.

Q4 PROPERTIES, LLC, and
Q5 PROPERTIES, LLC,

        Defendants.

_____/

### COUNTER-CLAIM AND ADDED PARTY COMPLAINT

Defendants, Q4 PROPERTIES, LLC ("Q4"), and Q5 PROPERTIES, LLC ("Q5"), by and through their undersigned attorney, hereby sues Plaintiff, NE 4th Court Loans, LLC and TOTALBANK, a Florida banking corporation ("TotalBank") to reform loan documents and for rescission of a "loan modification," and for damages and, in support thereof, Defendants allege the following:

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff, Q4 Properties, LLC, is a Florida Limited Liability Company. At all material times, Ofer Mizrahi was the sole managing member of Q4 Properties, LLC ("Mizrahi").

2.    Plaintiff, Q5 Properties, LLC, is a Florida Limited Liability Company.  At all material times,

Ofer Mizrahi was the sole managing member of Q5 Properties, LLC.

3. Added Party, TotalBank, is a Florida banking corporation which does business in Miami-Dade County, Florida.

4. Jurisdiction is proper in the Circuit Court for the Eleventh Judicial Circuit, in and for Miami-Dade County, because Plaintiffs seek damages in equity related to this pending case.

5. All conditions precedent to this action have been performed, have occurred, or have been waived.

### GENERAL ALLEGATIONS

6. Plaintiffs, Q4 Properties, LLC, and Q5 Properties, LLC, own two commercial properties located at 7380-7410 NE 4th Court and 7500 NE 4th Court, in Miami, Florida respectively (the "Real Property").

7. In 2008, Q4 Properties, LLC, and Q5 Properties, LLC, purchased the Real Property with funds borrowed from TotalBank, a Florida banking corporation.

8. On August 29, 2008, Plaintiff, Q4 Properties, LLC, executed and delivered a Promissory Note to TotalBank in the amount of $1,852,500.00, along with a Collateral Assignment of Rents and Leases. ("Q4 Loan").

9. On August 29, 2008, Plaintiff, Q5 Properties, LLC, executed and delivered a Promissory Note to TotalBank in the amount of $888,000.00, along with a Collateral Assignment of Rents and Leases ("Q5 Loan").

10. The Q4 Loan and Q5 Loan were adjustable to the 3 year T-bill, plus a margin.

11. Q4 and Q5 have retained counsel to bring this action and are entitled to recover their attorneys fees and costs for the defense and prosecution of this matter based upon the

Contract of the parties and contained in the Loan Documents.

## COUNT I

## RESCISSION OF LOAN MODIFICATION, ACCOUNTING AND DAMAGES

## BASED ON FRAUD IN THE INDUCEMENT

Plaintiffs re-allege and re-adopt paragraphs 1-11 of this Counter-Complaint as if fully set forth herein and further allege the following:

12. This is an in rem action for Declaratory Judgment for reformation of a mortgage modification agreement concerning real property located in Miami-Dade County, Florida, the value of which exceeds $15,000.00. In addition, Q4 and Q5 seek an accounting and damages for fraud.

13. On or about November 2010, a representative of TotalBank contacted Mizrahi and represented to him as follows ("Representations"):

   (a) Federal banking authorities were reviewing the Q4 Loan and the Q5 Loan;

   (b) The Q4 Loan and the Q5 Loan were not in compliance with "new rules";

   (c) As a result of noncompliance, TotalBank was required to restructure the Q4 Loan and Q5 Loan to comply with governmental rules; and

   (d) In the event that Q4 and Q5 would not sign modifications, TotalBank would have no option except to declare defaults and to foreclose.

14. TotalBank representatives informed Mizrahi that Q4 and Q5 should withhold payments until the modification was done.

15. Q4 and Q5 never solicited nor wanted a modification.

16. TotalBank informed Mizrahi that the modification "would not harm" Q4's and Q5's position.

("Additional Representation").

17. The Representations and Additional Representation were made by an agent of TotalBank with actual or apparent authority to make the statements to Q4 and Q5.

18. These Representations and Additional Representation were repeated between December 2010 and March 29, 2011, when Mizrahi, on behalf of Q4 and Q5, signed the loan modification documentation requested by Defendant, TotalBank.

19. The Representations and Additional Representation were made with the specific intent and/or goal of TotalBank to deceive Defendants/Counter Plaintiffs Q4 and Q5 and cause Q4 and Q5 to rely on them.

20. Q4 and Q5 actually relied on the Representations and Additional Representation made by TotalBank's representative and signed the loan modification documentation.

21. On March 29, 2011, Plaintiff, Q4 Properties, LLC, executed a Note and Mortgage Modification, Reaffirmation of Guaranty, and Cross-Default and Cross-Collateralization Agreements ("Loan Modification") (Backdated to December 2010; Recorded in April 2011). (*See* attached Composite Exhibit A).

22. On March 29, 2011, Plaintiff, Q5 Properties, LLC, executed a Note and Mortgage Modification, Reaffirmation of Guaranty, and Cross-Default and Cross-Collateralization Agreements ("Loan Modification") (Backdated to December 2010; Recorded in April 2011). (*See* attached Composite Exhibit B).

23. The Loan Modification was detrimental to Q4 and Q5 in that included therein was an interest rate "floor" of 5.5% which was greater than the Q4 loan interest rate and Q5 loan interest rate.

24.    Furthermore, TotalBank required Q4 and Q5 to pay substantial costs associated with the Loan Modifications.

25.    Payment of the Loan Modifications costs along with the increased interest rate, diverted funds away from Q4 and Q5 needed for the upkeep, renovation and preparation of the Real Property for tenants and to increase the rent roll.

26.    The Representations and Additional Representation made by TotalBank's representatives were false and misleading and were made for the ulterior purpose of increasing the profits of TotalBank at the expense of Q4 and Q5.

27.    Q4 and Q5 relied on the Representations and Additional Representation made by TotalBank's representative to their detriment, where the Loan Modifications benefitted only TotalBank.

28.    Subsequent to the Loan Modifications, disputes erupted between Q4, Q5, and TotalBank over the operation of the Loan Modifications and TotalBank sold the Q4 and Q5 Loans to NE 4th Court.

29.    NE 4th Court took the loans with actual or constructive knowledge of a dispute of the loan terms and amount by the borrowers.

30.    Alternatively, NE 4th Court should have known of the dispute, being on, at the very least, inquiry notice.

31.    As a direct and proximate result of the fraudulent acts of TotalBank, Q4 and Q5 have been damaged, in the form of monies paid to TotalBank which were applied to interest instead of principal, monies for closing costs, increased expenses, reduced income; and, potentially the loss of the Real Property.

32.     Q4 and Q5 have no adequate remedy at law, particularly where NE 4th Court is seeking to enforce a claimed default based on the Modifications, Q4 and Q5 are attempting to pay the loans according to their original terms and Q4 and Q5 are exposed to a foreclosure.

33.     Only Defendants, Q4 and Q5, TotalBank and NE 4th Court have an interest in this reformation action.

*WHEREFORE*, Plaintiffs demand judgment against NE 4th Court and TotalBank for rescission of the loan modification, an accounting of the sums paid thereunder and as to TotalBank damages, lost profits, costs and expenses, and all other relief this Court deems just and proper. Q4 and Q5 demand a jury trial of all issues so triable.

<u>COUNT II</u>

**RESCISSION OF LOAN MODIFICATION BASED ON**

**NEGLIGENT MISREPRESENTATION**

Plaintiffs re-allege and re-adopt paragraphs 1-18, 20 through 33 of this Counter-Complaint as if fully set forth herein and further allege the following:

34.     The Representations and Additional Representation were made by TotalBank negligently or recklessly and without full disclosure of information that the borrowers need to properly evaluate the demand.

35.     TotalBank made the Representations and Additional Representation with the intent that Q4 and Q5 to rely on them.

*WHEREFORE,* Plaintiffs demand judgment against NE 4th Court and TotalBank for rescission of the loan modification, an accounting of the sums paid thereunder and as to TotalBank damages, lost profits, costs and expenses, and all other relief this Court deems just and proper. Q4

and Q5 demand a jury trial of all issues so triable.

## COUNT III

### REFORMATION OF LOAN DOCUMENTS

Plaintiffs re-allege and re-adopt paragraphs 1 through 11, 21, 22, and 28 to 30 of this Complaint as if fully set forth herein and further allege the following:

36.     As a result of a mutual mistake on the part of Defendants/Counter Plaintiffs, Q4 and Q5, and TotalBank, the loan documents fail to express the intended agreement of the parties.

37.     Specifically, Q4 and Q4 made a pre-payment of $16,875 to TotalBank.

38.     In 2014, Defendants, Q4 and Q5 discovered that the pre-payment was not applied to the loan or costs and this resulted in the original principal balance being overstated on the Notes.

39.     In equity, the prepayment should be allocated proportionately between the two Notes, and the Notes and Mortgages reformed to reflect the true starting principal.

40.     Defendants have also recently discovered that during the loan administration, TotalBank charged interest at a rate above the rate stated in the Notes and charged escrow that was far in excess of the amounts needed.  When asked, TotalBank refused to credit the overages to the installments artificially creating a delinquency.

41.     This mistake and the mistake on the pre-payment resulted in the balance re-stated in 2010 loan modification documents to be overstated.

42.     To the extent that the 2010 Modification Agreement is valid and not rescinded, it should be reformed to reflect the prepayment and the interest overcharge in that all overcharges must be applied to principal reductions.

*WHEREFORE*, Plaintiffs demand judgment against NE 4th Court and TotalBank for

reformation of the Note and Mortgages as well as the Modifications, an accounting of the sums paid thereunder and as to TotalBank damages, lost profits, costs and expenses, and all other relief this Court deems just and proper.   Q4 and Q5 demand a jury trial of all issues so triable.

**COUNT IV**
**EQUITABLE ESTOPPEL**

Plaintiffs re-allege and re-adopt paragraphs 1 through 11, 21, 22, and 28 to 30 of this Complaint as if fully set forth herein and further allege the following:

43.     On July 21, 2008, Mizrahi executed and delivered a check to TotalBank for $16,875.00 (the "Check").

44.     The Check was presented to the payor's bank and was paid to TotalBank.

45.     The Check was originally intended to be a deposit on the closing, points and costs of a proposed line of credit; however, TotalBank elected to arrange the credit through a construction loan.

46.     When Mizrahi requested a refund of the funds represented by the Check, a representative of TotalBank, with actual or apparent authority to do so, represented to Mizrahi that the funds would be credited to the Q4 Loan and to the Q5 Loan.

47.     In reliance on the representation concerning the Check, Mizrahi and Q4 and Q5 believed that a credit had been given for the amount of the Check.

48.     Subsequently, TotalBank sold the Q4 Loan and Q5 Loan and upon inquiry in the existing foreclosure litigation, it was discovered that the funds were never applied to the Q4 Loan and Q5 Loan as represented.

*WHEREFORE*, Plaintiffs demand judgment that NE 4th Court and TotalBank are estopped from asserting a higher principal balance as the starting principal of the Q4 Loan and Q5 Loan, an

accounting of the subsequent overcharged interest and late fees, and all other relief this Court deems

just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of May, 2015, a copy of the foregoing has been filed via CM/ECF and served as set forth in the service list below.

/s/ Scott Alan Orth, Esq.
**SCOTT ALAN ORTH, ESQ.**
Florida Bar No. 436313
*Counsel for Defendants, Q4 PROPERTIES, LLC., and Q5 PROPERTIES, LLC*
LAW OFFICES OF SCOTT ALAN ORTH, P.A.
3860 Sheridan Street, Suite A
Hollywood, FL  33021
305.757.3300 / 305.757.0071 Fax
scott@orthlawoffice.com
service@orthlawoffice.com (primary)
eserviceSAO@gmail.com (secondary)

*Via CM/ECF Electronic Notification*
Jeffrey C. Roth, Esq., via jeff@rothandscholl.com
Grace E. Robson, Esq., via grobson@mrthlaw.com
Ross R. Hartog, Esq., via rhartog@mrthlaw.com
Johanna Castellon Vega, Esq., via jcastellon-vega@prmiamilaw.com

CFN: 20110210041 BOOK 27637 PAGE 4429
DATE:04/01/2011 11:25:41 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

This Instrument Was Prepared By
and should be returned to:
ALAN W. LEVINE, ESQ.
LEVINE & PARTNERS, P.A.
1110 Brickell Avenue, 7th Floor
Miami, Florida 33131

NOTE TO RECORDER:  This instrument is a modification of that certain Mortgage and Security Agreement dated August 29, 2008, and recorded August 29, 2008 in Official Records Book 26545, at Page 4836 of the Public Records of Miami-Dade County, Florida (the "Public Records"), as modified pursuant to that certain Corrective Modification of Mortgage dated October 22, 2008, recorded October 28, 2008, in Official Records Book 26627, at Page 2985 of the Public Records, securing the original principal sum of $1,852,500.00.  Florida Documentary Stamp Taxes and Intangible Taxes have been paid with respect to the original principal indebtedness secured by such mortgage and payment of such is reflected on the above-described instruments.

## NOTE AND MORTGAGE MODIFICATION, REAFFIRMATION OF GUARANTY, AND CROSS-DEFAULT AND CROSS-COLLATERALIZATION AGREEMENT

THIS AGREEMENT, is made as of December 5, 2010, by and between **Q4 Properties, LLC, a Florida limited liability company and Coverings Etc. Inc., a Florida corporation, whose address is 7610 NE 4th Ct., Miami, Florida 33138** (collectively, jointly and severally, the "Borrower"), Ofer Mizrahi ("Guarantor"); and **TOTALBANK**, a Florida banking corporation whose address is 2720 Coral Way, Miami, Florida 33145 (hereafter referred to as "Lender").

### WITNESSETH:

WHEREAS, The Lender and Borrower entered into that certain loan in the original principal amount of $1,852,500.00 (the "Loan") made by Lender to the Borrower pursuant to the terms of that certain Promissory Note dated August 29, 2008 (hereafter referred to as the "Note");

WHEREAS, the Note is secured by, *among other things,* that certain Mortgage and Security Agreement dated August 29, 2008, and recorded August 29, 2008 in Official Records Book 26545, at Page 4836, of the Public Records, as modified pursuant to that certain Corrective Modification of Mortgage dated October 22, 2008, recorded October 28, 2008, in Official Records Book 26627, at Page 2985 of the Public Records (the "Mortgage"), both executed by Borrower in favor of Lender, secured upon certain premises situated in Miami-Dade County, State of Florida, together with the buildings and other improvements now or hereafter constructed thereon, more particularly described on Exhibit "A" hereto (the " Property"); and

WHEREAS, the Note is guaranteed by Guarantor pursuant to that certain Unconditional Guaranty (the "Guaranty") executed by Guarantor in favor of Lender dated August 29, 2008.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender agree as follows:

1

E:\WORK\G\0256.275\d\Mortgage Modification Agreement.DOC

Composite A

CFN: 20110210044 BOOK 27637 PAGE 4430

1.    Recital. The foregoing recitals are true and correct and are incorporated herein by this reference.

2.    Acknowledgement. The Borrower unconditionally acknowledges and agrees that the outstanding principal balance of the Note, as of this date, is the sum of $1,813,778.73 and interest on the Note is being paid through March 5, 2011, contemporaneously herewith.

3.    Modification of Note. The Borrower and Lender hereby agree that the Note is hereby modified as follows (defined terms utilized below shall have the meaning ascribed to them in the Note unless otherwise indicated):

Monthly payments of accrued interest only, at the interest rate hereinafter set forth, shall be due and payable commencing on January 5, 2011, without set-off or deduction, and continuing on the Fifth (5th) day of each calendar month thereafter for fifteen (15) months until March 5, 2012. Commencing with the payment due April 5, 2012, and continuing on the Fifth (5th) day of each calendar month thereafter, equal monthly payments of principal and interest (the "Monthly P&I Payment") in an amount sufficient to fully amortize the outstanding principal balance of this Note, together with accrued interest thereon, over the remaining term of the Amortization Period until the Maturity Date, at which time the entire unpaid principal balance of the Note, together with accrued but unpaid interest thereon shall be due and payable in full.

Prior to maturity, a default and/or the Adjustment Date, interest shall accrue on the whole of the principal balance remaining outstanding from time to time at a fixed rate equal to Three and One-Quarter Percent (3.25%) per annum. The interest rate applicable hereunder shall change (each, an "Adjustment Date")(a) on March 5, 2012 to a fixed rate equal to Five and One-Half percent (5.5%) per annum, and (b) on March 5, 2015 to a fixed rate equal to the greater of (i) Three Hundred Fifty basis points (i.e. 3.5%) above the Three (3) year Treasury Bill Constant Maturities published in Federal Reserve Statistical Release H-15 in effect on such date; or (ii) Five and One-Half Percent (5.5%) per annum. Upon any change in the interest rate applicable hereunder, the Monthly P&I Payment shall also be adjusted to an amount which fully amortizes the then outstanding principal balance of this Note, plus interest thereon at the adjusted rate, over the remaining term of the Amortization Period.

4.    No Claims. As a material inducement to Lender, Borrower specifically agrees that it has no defense, claim or offset against its obligation to pay the amounts owed under the Note and Borrower hereby forever waives, releases and relinquishes any and all claims, demands or actions which it may have which in any way relates to or arises out of the Mortgage, the Note or any other

2

E:\WORK\G\0256.275\d\Mortgage Modification Agreement.DOC

CFN: 20110210044 BOOK 27637 PAGE 4431

documents executed in connection therewith (such documents being collectively referred to herein as the "Loan Documents") through the date hereof.

5.      No Novation.  It is the intent of the parties hereto that this Agreement shall not constitute a novation or in any way adversely affect the lien of the Loan Documents.

6.      Ownership.  Borrower warrants and represents to Lender that Borrower is the fee simple owner of the Property and that there are no other liens or claims encumbering same other than the lien of the Mortgage and those additional matters, if any, described in the Lender title insurance commitment approved by Lender; and in consideration of the Property and of the Lender making the modification and advance evidenced by this Agreement, Borrower acknowledges, covenants and agrees that the Mortgage secures the payment of Note and is a valid and enforceable first lien upon the Property.

7.      Cross-Collateralization and Cross-Default.  In addition to securing the Note and the other Loan Documents, this Mortgage also secures that certain promissory note dated August 29, 2008, in the principal sum of Eight Hundred Eighty Eight Thousand Dollars ($888,000), executed by Q5 Properties, LLC, a Florida limited liability company and Coverings Etc. Inc., a Florida corporation in favor of Lender, which is secured by a mortgage dated August 29, 2008, recorded in Official Record Book 26553, at Page 1147, of the Public Records of Miami-Dade County, Florida executed by Q5 Properties, LLC in favor of Lender (said note and mortgage, and all documents executed in connection therewith in favor of Lender, are referred individually and/or collectively as the "Q5 Loan").  Any default by Mortgagor in the payment or performance of any of the Loan Documents shall, at the option of Mortgagee, constitute a default not only with respect to the Note, this Mortgage and the Loan Documents, but also with respect to the Q5 Loan; and any default by Mortgagor in the payment or performance of the Q5 Loan shall, at the option of Lender, constitute a default not only with respect to the provisions contained in the Q5 Loan, but also with respect to the Note, this Mortgage and the Loan Documents, and, in any of such events, Lender shall be entitled to exercise all of the rights granted to Lender in the event of a default as set forth in the Note, the documents evidencing the Q5 Loan.

8.      Restatement of Warranties, Representations and Covenants.  All of Borrower's and Guarantor's warranties, representations and covenants in the Loan Documents are reaffirmed by Borrower and Guarantor and Borrower and Guarantor warrant, represent and covenant with Lender that the same are true and correct as of the date of this Agreement.

9.      Reaffirmation and Ratification.  Guarantor hereby reaffirms and ratifies its obligations under the Guaranty and agrees that such Guaranty remains in full force and effect and such Guaranty shall continue to secure repayment of the Note as modified by this Agreement. Except as modified by this Agreement, all of the terms and provisions of the Loan Documents are hereby ratified, confirmed and reaffirmed by Borrower and Guarantor and shall remain unmodified and in full force and effect.

3

E:\WORK\G\0256.275\d\Mortgage Modification Agreement.DOC

CFN: 20110210044 BOOK 27637 PAGE 4432

10.    Conflict.    In the event of a conflict between the terms and provisions of this Agreement and the terms and provisions of any of the other Loan Documents, the terms and provisions of this Agreement shall govern.

11.    Additional Representations and Warranties.    In order to induce Lender to modify the Loan, Borrower and Guarantor further represent, warrant and acknowledge that: (a) this Agreement and all other Loan Documents constitute valid and binding obligations of Borrower and Guarantor, enforceable against Borrower and Guarantor in accordance with their respective terms; (b) no payment of interest which has been made to the Lender nor contracted to be made to Lender has resulted or will result in the computation or earnings of interest in excess of the maximum lawful rate; and (c) Lender is under no obligation to grant or to make any further or additional loans to Borrower, or to further extend, amend or modify the Note or any other Loan Documents.

12.    **BORROWER AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION PROCEEDINGS OR COUNTERCLAIMS ARISING OUT OF, UNDER, OR IN CONNECTION WITH THE NOTE, MORTGAGE, THIS AGREEMENT, THE GUARANTY OR ANY OF THE OTHER LOAN DOCUMENTS. FURTHER, BORROWER AND GUARANTOR HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF THE LENDER NOR THE LENDER'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. THE BORROWER AND GUARANTOR ACKNOWLEDGE THAT THE LENDER HAS BEEN INDUCED TO ENTER INTO THIS TRANSACTION BY, INTER ALIA, THE PROVISIONS OF THIS SECTION. BORROWER AND GUARANTOR AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE WAIVED.**

IN WITNESS WHEREOF, and intending to be legally bound hereby, Borrower, Guarantor and Lender have duly executed this Note and Mortgage Modification, Reaffirmation of Guaranty, and Cross-Default and Cross-Collateralization Agreement as of the day and year first above written.

Signed, Sealed and Delivered
in our presence:

Print Name: _____

Print Name: _____

Q4 PROPERTIES, LLC, a Florida limited company

By: _____
    Ofer Mizrahi, Managing Member

4

CFN: 20110210044 BOOK 27637 PAGE 4433

Print Name:

Print Name:

Print Name:

Print Name:

Coverings Etc. Inc., a Florida corporation

By: _____
Ofer Mizrahi, President

**Guarantor**

By: _____
Ofer Mizrahi, Individually


STATE OF FLORIDA              )
                             ) SS
COUNTY OF MIAMI-DADE          )


THE FOREGOING INSTRUMENT was acknowledged before this ___ day of March, 2011, by Ofer Mizrahi, Individually, and as Managing Member of Q4 Properties, LLC, a Florida limited liability company, and as President of Coverings Etc. Inc., a Florida corporation, who is personally known to me or has produced _____ as identification.



ELIZABETH A. LOPEZ
MY COMMISSION #DD970009
EXPIRES: JUN 23, 2012
Bonded through 1st State Insurance

My Commission Expires:

_____
NOTARY PUBLIC, State of Florida
Print Name: _____

5

CFN: 20110210044 BOOK 27637 PAGE 4434

(LENDER)

**TOTALBANK**

Print Name: _____

Print Name: _____

By: _____
Name: _____
Title: _____

STATE OF FLORIDA          )
                         ) SS
COUNTY OF MIAMI-DADE     )

THE FOREGOING INSTRUMENT was acknowledged before this ___ day of March, 2011, by _____, as _____, of TotalBank, a Florida banking corporation, a Florida limited liability company, who is personally known to me or has produced _____ as identification.

_____
NOTARY PUBLIC, State of Florida
Print Name: _____

My Commission Expires:

ELIZABETH A. LOPEZ
MY COMMISSION #DD970009
EXPIRES: JUN 23, 2012
Bonded through 1st State Insurance

6

CFN: 20110210044 BOOK 27637 PAGE 4435

## EXHIBIT "A"
## LEGAL DESCRIPTION

Lots 12, 13, 14, 15 and 16 in Block 17, of FEDERAL WAY AMENDED, according to the Plat thereof, recorded in Plat Book 25, at Page 6 of the Public Records of Miami-Dade County, Florida.

C 20110210043 BOOK 27637 PAGE 4422
DATE:04/01/2011  11:25:41 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

This Instrument Was Prepared By
and should be returned to:
ALAN W. LEVINE, ESQ.
LEVINE & PARTNERS, P.A.
1110 Brickell Avenue, 7th Floor
Miami, Florida 33131

NOTE TO RECORDER:  This instrument is a modification of that certain Mortgage and Security Agreement dated August 29, 2008, and recorded September 4, 2008 in Official Records Book 26553, at Page 1147 of the Public Records of Miami-Dade County, Florida (the "Public Records"), securing the original principal sum of $888,000.00.  Florida Documentary Stamp Taxes and Intangible Taxes have been paid with respect to the original principal indebtedness secured by such mortgage and payment of such is reflected on the above-described instruments.

## NOTE AND MORTGAGE MODIFICATION, REAFFIRMATION OF GUARANTY, AND CROSS-DEFAULT AND CROSS-COLLATERALIZATION AGREEMENT

THIS AGREEMENT, is made as of December 5, 2010, by and between Q5 Properties, LLC, a Florida limited liability company ("Q5") and Coverings Etc. Inc., a Florida corporation, whose address is 7610 NE 4th Ct., Miami, Florida 33138 (collectively, jointly and severally, the "Borrower"), and Ofer Mizrahi ("Guarantor"), whose address is 7610 NE 4th Ct., Miami, Florida 33138; and TOTALBANK, a Florida banking corporation whose address is 2720 Coral Way, Miami, Florida 33145 (hereafter referred to as "Lender").

### WITNESSETH:

WHEREAS, The Lender and Borrower entered into that certain loan in the original principal amount of $888,000.00 (the "Loan") made by Lender to the Borrower pursuant to the terms of that certain Promissory Note dated August 29, 2008 (hereafter referred to as the "Note");

WHEREAS, the Note is secured by, *among other things,* that certain Mortgage and Security Agreement dated August 29, 2008, recorded September 4, 2008 in Official Records Book 26553, at Page 1147, of the Public Records (the "Mortgage") executed by Borrower in favor of Lender, secured upon certain premises situated in Miami-Dade County, State of Florida, together with the buildings and other improvements now or hereafter constructed thereon, more particularly described on Exhibit "A" hereto (the " Property");

WHEREAS, the Note is guaranteed by Guarantor pursuant to that certain Unconditional Guaranty (the "Guaranty") executed by Guarantor in favor of Lender dated August 29, 2008.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower, Guarantor and Lender agree as follows:

1

E:\WORK\G\0256.276\d\Mortgage Modification Agreement.DOC

Composite B

CFN: 20110210043 BOOK 27637 PAGE 4423

1.    Recitals. The foregoing recitals are true and correct and are incorporated herein by this reference.

2.    Acknowledgement. The Borrower unconditionally acknowledges and agrees that the outstanding principal balance of the Note, as of this date, is the sum of $870,682.48 and interest on the Note is being paid through March 5, 2011, contemporaneously herewith.

3.    Modification of Note. The Borrower and Lender hereby agree that the Note is hereby modified as follows (defined terms utilized below have the meaning ascribed to them in the Note unless otherwise indicated):

Monthly payments of accrued interest only, at the interest rate hereinafter set forth, shall be due and payable commencing on January 5, 2011, without set-off or deduction, and continuing on the Fifth (5th) day of each calendar month thereafter for fifteen (15) months until March 5, 2012. Commencing with the payment due April 5, 2012, and continuing on the Fifth (5th) day of each calendar month thereafter, equal monthly payments of principal and interest (the "Monthly P&I Payment") in an amount sufficient to fully amortize the outstanding principal balance of this Note, together with accrued interest thereon, over the remaining term of the Amortization Period until the Maturity Date, at which time the entire unpaid principal balance of the Note, together with accrued but unpaid interest thereon shall be due and payable in full.

Prior to maturity, a default and/or the Adjustment Date, interest shall accrue on the whole of the principal balance remaining outstanding from time to time at a fixed rate equal to Three and One-Quarter Percent (3.25%) per annum. The interest rate applicable hereunder shall change (each, an "Adjustment Date")(a) on March 5, 2012 to a fixed rate equal to Five and One-Half percent (5.5%) per annum, and (b) on March 5, 2015 to a fixed rate equal to the greater of (i) Three Hundred Fifty basis points (i.e. 3.5%) above the Three (3) year Treasury Bill Constant Maturities published in Federal Reserve Statistical Release H-15 in effect on such date; or (ii) Five and One-Half percent (5.5%) per annum. Upon any change in the interest rate applicable hereunder, the Monthly P&I Payment shall also be adjusted to an amount which fully amortizes the then outstanding principal balance of this Note, plus interest thereon at the adjusted rate, over the remaining term of the Amortization Period.

4.    No Claims. As a material inducement to Lender, Borrower specifically agrees that it has no defense, claim or offset against its obligation to pay the amounts owed under the Note and Borrower and Guarantor hereby forever waives, releases and relinquishes any and all claims, demands or actions which it may have which in any way relates to or arises out of the Mortgage, the

2

E:\WORK\G\0256.276\d\Mortgage Modification Agreement.DOC

CFN: 20110210043 BOOK 27637 PAGE 4424

Note or any other documents executed in connection therewith (such documents being collectively referred to herein as the "Loan Documents") through the date hereof.

5. No Novation. It is the intent of the parties hereto that this Agreement shall not constitute a novation or in any way adversely affect the lien of the Loan Documents.

6. Ownership. Borrower warrants and represents to Lender that Borrower is the fee simple owner of the Property and that there are no other liens or claims encumbering same other than the lien of the Mortgage and those additional matters, if any, described in the Lender title insurance commitment approved by Lender; and in consideration of the Property and of the Lender making the modification and advance evidenced by this Agreement, Borrower acknowledges, covenants and agrees that the Mortgage secures the payment of Note and is a valid and enforceable first lien upon the Property.

7. Cross-Collateralization and Cross-Default. In addition to securing the Note and the other Loan Documents, this Mortgage also secures that certain promissory note dated August 29, 2008, in the principal sum of One Million Eight Hundred Fifty Two Thousand Five Hundred Dollars ($1,852,000.00), executed by Q4 Properties, LLC, a Florida limited liability company and Coverings Etc. Inc., a Florida corporation in favor of Lender, which is secured by a mortgage dated August 29, 2008, recorded August 29, 2008, in Official Record Book 26545, at Page 4836, as modified pursuant to that certain Corrective Modification of Mortgage dated October 22, 2008, recorded October 28, 2008, in Official Records Book 26627, at page 2985 of the Public Records of Miami-Dade County, Florida (the indebtedness evidenced and secured by said note and mortgage, and all documents executed in connection therewith in favor of Lender, are referred individually and/or collectively as the "Q4 Loan"). Any default by Mortgagor in the payment or performance of any of the Loan Documents shall, at the option of Mortgagee, constitute a default not only with respect to the Note, this Mortgage and the Loan Documents, but also with respect to the Q4 Loan; and any default by Mortgagor in the payment or performance of the Q4 Loan shall, at the option of Lender, constitute a default not only with respect to the provisions contained in the Q4 Loan, but also with respect to the Note, this Mortgage and the Loan Documents, and, in any of such events, Lender shall be entitled to exercise all of the rights granted to Lender in the event of a default as set forth in the Note, the documents evidencing the Q4 Loan.

8 Restatement of Warranties, Representations and Covenants. All of Borrower's and Guarantor's warranties, representations and covenants in the Loan Documents are reaffirmed by Borrower and Guarantor and Borrower and Guarantor warrant, represent and covenant with Lender that the same are true and correct as of the date of this Agreement.

9. Reaffirmation and Ratification. Guarantor hereby reaffirms and ratifies its obligations under the Guaranty Agreement and agrees that such Guaranty remains in full force and effect and such Guaranty shall continue to secure repayment of the Note as modified by this Agreement. Except as modified by this Agreement, all of the terms and provisions of the Loan

3

E:\WORK\G\0256.276\d\Mortgage Modification Agreement.DOC

CFN: 20110210043 BOOK 27637 PAGE 4425

Documents are hereby ratified, confirmed and reaffirmed by Borrower and Guarantor and shall remain unmodified and in full force and effect.

10.    Conflict.    In the event of a conflict between the terms and provisions of this Agreement and the terms and provisions of any of the other Loan Documents, the terms and provisions of this Agreement shall govern.

11.    Additional Representations and Warranties.    In order to induce Lender to modify the Loan, Borrower and Guarantor further represent, warrant and acknowledge that: (a) this Agreement and all other Loan Documents constitute valid and binding obligations of Borrower and Guarantor, enforceable against Borrower and Guarantor in accordance with their respective terms; (b) no payment of interest which has been made to the Lender nor contracted to be made to Lender has resulted or will result in the computation or earnings of interest in excess of the maximum lawful rate; and (c) Lender is under no obligation to grant or to make any further or additional loans to Borrower, or to further extend, amend or modify the Note or any other Loan Documents.

12.    BORROWER    AND    GUARANTOR    HEREBY    KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION PROCEEDINGS OR COUNTERCLAIMS ARISING OUT OF, UNDER, OR IN CONNECTION WITH THE NOTE, MORTGAGE, THIS AGREEMENT, THE GUARANTY OR ANY OF THE OTHER LOAN DOCUMENTS. FURTHER, BORROWER AND GUARANTOR HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF THE LENDER NOR THE LENDER'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION.    THE BORROWER AND GUARANTOR ACKNOWLEDGE THAT THE LENDER HAS BEEN INDUCED TO ENTER INTO THIS TRANSACTION BY, INTER ALIA, THE PROVISIONS OF THIS SECTION. BORROWER AND GUARANTOR AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE WAIVED.

E:\WORK\G\0256.276\d\Mortgage Modification Agreement.DOC

CFN: 20110210043 BOOK 27637 PAGE 4426

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, Borrower and Lender have executed this Note and Mortgage Modification Agreement and Receipt for Future Advance Agreement as of the day and year first above written.

Signed, Sealed and Delivered
in our presence:

Print Name: _Paul Levine_

Print Name: _____

Print Name: _____

Print Name: _Paul Levine_

Print Name: _____

Print Name: _____

**Q5 PROPERTIES, LLC**, a Florida limited company

By: _____
Ofer Mizrahi, Managing Member

**Coverings Etc. Inc., a Florida corporation**

By: _____
Ofer Mizrahi, President

**Guarantor**

By: _____
Ofer Mizrahi, Individually

STATE OF FLORIDA          )
                          ) SS
COUNTY OF MIAMI-DADE      )

THE FOREGOING INSTRUMENT was acknowledged before this 2? day of March, 2011, by Ofer Mizrahi, Individually and as Managing Member of Q5 Properties, LLC, a Florida limited liability company, and as President of Coverings Etc. Inc., a Florida corporation, who is personally known to me or has produced _Driver's License_ as identification.

ELIZABETH A. LOPEZ
MY COMMISSION #DD970009
EXPIRES: JUN 23, 2012
Bonded through 1st State Insurance

NOTARY PUBLIC, State of Florida
Print Name: _____

My Commission Expires:

5

E:\WORK\G\0256.276\d\Mortgage Modification Agreement.DOC

CFN: 20110210043 BOOK 27637 PAGE 4427

(LENDER)

**TOTALBANK**

Print Name: _Elizabeth Lopez_

Print Name: _Paul Cuvive_

By: _____
Name: _Roberto _____
Title: _____

STATE OF FLORIDA          )
                          ) SS
COUNTY OF MIAMI-DADE      )

THE FOREGOING INSTRUMENT was acknowledged before this 2.9 day of March, 2011, by _____, as _____, of TotalBank, a Florida banking corporation, a Florida limited liability company, who is personally known to me or has produced _____ as identification.

ELIZABETH A. LOPEZ
MY COMMISSION #DD970009
EXPIRES: JUN 23, 2012
Bonded through 1st State Insurance

NOTARY PUBLIC, State of Florida
My Commission Expires: _____ Print Name: _____

6

E:\WORK\G\0256.276\d\Mortgage Modification Agreement.DOC

CFN: 20110210043 BOOK 27637 PAGE 4428

## EXHIBIT "A"
## LEGAL DESCRIPTION

The South 7 feet of Lot 5 and all of Lots 6 and 7, in Block 17, of FEDERAL WAY AMENDED, according to the Plat thereof, recorded in Plat Book 25, at Page 6 of the Public Records of Miami-Dade County, Florida.